

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTIMARK CORPORATION, ) | |
| ) | 08 C 7323 |
| Plaintiff and Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| VINCENT J. VITEK and TECTA ) | Hon. Charles R. Norgle |
| AMERICA CORPORATION, ) | |
| ) | |
| Defendants and Counter-Plaintiffs. ) | |

## OPINION AND ORDER

The Plaintiff and Counter-Defendant is Centimark Corporation ("Centimark"). The Defendants and Counter-Plaintiffs are Vincent J. Vitek ("Vitek") and Tecta American Corporation ("Tecta"). The Court will refer to Vitek and Tecta collectively as "Defendants."

This case arises from a scenario in which Vitek signed a non-compete agreement when he began his employment with Centimark, but years later resigned from his position at Centimark and went to work for its competitor Tecta. On December 29, 2010, the Court issued an Opinion and Order granting Defendants' Motion for Summary Judgment in part and denying that Motion in part. Centimark Corp. v. Vitek, No. 08 C 7323, 2010 WL 5490662 (N.D. Ill. Dec. 29, 2010). The Court reserved ruling on Centimark's Motion for Summary Judgment, which we now address.

In its Motion for Summary Judgment, Centimark asks the Court to terminate Defendants' Counterclaims with prejudice. As the Court will explain more fully in this Opinion's Procedural History section, approximately a month after Centimark filed its Motion for Summary Judgment,

1

the parties stipulated to the dismissal of some of Defendants' Counterclaims. The only remaining Counterclaim concerns Centimark's buy-back of stock options it previously gave to Vitek. For the following reasons, Centimark's Motion for Summary Judgment is granted as to that Counterclaim.

## I. INTRODUCTION

### A. Facts

The Court outlined the broad factual background to this case in its December 29, 2010 Opinion. In today's Opinion, the Court will recite only those additional facts pertinent to Centimark's Motion for Summary Judgment. As always, the Court takes the undisputed facts from the parties' Local Rule 56.1 Statements and attached exhibits, and notes any disputed facts.

In August 2000, Centimark decided to give Vitek and other upper management employees company stock options. Centimark spelled out the terms of its decision in a document titled the "Centimark Corporation 2000 Incentive Stock Option Plan" ("Option Plan"). The purpose of the Option Plan was:

> to promote the interests of Centimark Corporation (hereinafter the "Company"), by affording an incentive to certain officers and key management employees to remain in the employ of the Company and to use their best efforts on its behalf; and to further aid the Company in attracting, maintaining, and developing capable management personnel of a caliber required to ensure the Company's continued success.

App. to Defs.' Resp. to Centimark's Rule 56.1 Statement, Tab 11, ¶ 1. On October 1, 2000, Centimark granted Vitek the option to purchase up to 2,500 shares of company stock at "fair market value" over a five-year period. Id., Tab 3, ¶¶ 1-2. Centimark and Vitek memorialized this arrangement in a document titled "Grant of Incentive Stock Option" ("Vitek Grant"). Id.,

Tab 3. Under the Vitek Grant, Vitek's options became exercisable in 500 share annual installments beginning October 1, 2001. Id., ¶ 2. The Vitek Grant states that "Centimark gives this Grant to the Grantee without consideration or value because the Grantee is not required to pay for the Stock until exercise of the stock option. The delivery of this Grant is not a 'sale' of securities to the Grantee and the Grantee has no choice but to accept the Grant." Id., ¶ 1. The Vitek Grant also expressly indicates that "[t]he validity, construction, interpretation and effect of this instrument shall exclusively be determined in accordance with the law of the State of Pennsylvania . . . ." Id., ¶ 13.

In February 2004, Centimark decided to cancel the Option Plan and to buy back any currently outstanding stock options. At that point, Vitek had not exercised any of his options. Centimark offered each employee $1.50 per option, regardless of whether the options had fully vested. On April 15, 2004, Vitek signed a document titled "Agreement for Repurchase of Stock Options" ("Repurchase Agreement") in which he agreed to accept a cash payment of $3,750 for the full 2,500 options. Id., Tab 4, ¶ 2. Vitek alleges that after he sold his options back to Centimark, the value of Centimark's stock rose sharply, and he was deprived of these additional earnings.

Centimark asserts that Vitek voluntarily returned his options. In support of this assertion, Centimark directs the Court's attention the following paragraph of the Repurchase Agreement:

> The Option Holder further acknowledges that although he is in a management position in the Company and generally familiar with its prospects he has had an opportunity to ask questions of other management personnel, obtain more information from the Company and has had an opportunity to consult with his own attorney and/or tax advisor regarding this Agreement and the price being offered by the Company. . . Finally, Option Holder acknowledges that there is no requirement or other obligation to sell back to the Company the options which he presently holds.

3

> **The acceptance or rejection of this offer by Option Holder is within the sole discretion of the Option Holder and shall have no effect on the present or future conditions of employment of the Option Holder with the Company.**

Id., ¶ 1. Vitek, however, testified that Centimark threatened to fire him if he refused to sign the Repurchase Agreement.

The Court notes three other provisions of the Repurchase Agreement relevant to the instant Motion. First, the Repurchase Agreement vitiates any other agreements between Centimark and Vitek regarding company stock options:

> This Agreement and the Disclosure Statement supercedes all prior agreements and understandings between the parties, whether oral or written, relating to ownership of stock, the value of the Company and its future prospects. There are no other understandings or agreements between them concerning the issuance, purchase or sale of Company stock or its value.

Id., ¶ 7. Second, under the Repurchase Agreement, Vitek agreed to release Centimark from any claims arising from the Option Plan or the Vitek Grant.

> [E]ach of the parties hereby releases and discharges the other from any and all claims and demands, action, and causes of action, of whatever nature heretofore existing or claimed to exist in favor of the one and against the other, whether known or unknown, arising out of the [Vitek] Grant or the Option Holder's relinquishment of rights under the said [Vitek] Grant or under the [Option] Plan.

Id., ¶ 8. Third, the Repurchase Agreement expressly states that it "shall be construed in accordance with the law of the Commonwealth of Pennsylvania." Id., ¶ 11.

As the Court explained in its December 29, 2010 Opinion, Vitek continued to work for Centimark until April 21, 2008. Centimark, 2010 WL 5490662, at *3. He began his employment at Tecta on May 12, 2008. Id.

## B. Procedural History

Centimark filed suit against Defendants on May 1, 2008, alleging numerous causes of action including breach of the Employment Agreement, misappropriation of trade secrets, and tortious interference. Id. Vitek filed his Amended Counterclaims for Breach of Contract, Promissory Estoppel, and for a violation of the Illinois Wage Payment and Collection Act on May 29, 2009. Vitek based his Counterclaims on Centimark's alleged forced buy-back of his stock options, and Centimark's alleged failure to pay him certain "Additional Compensation" not related to his stock options. Tecta also filed a Counterclaim for Tortious Interference with Business Expectancy. After the parties filed their Motions for Summary Judgment, they filed a Stipulation to Dismiss in which they agreed to dismiss: (1) Tecta's Tortious Interference Counterclaim; and (2) Vitek's Counterclaims to the extent they were based on Centimark's alleged failure to pay him "Additional Compensation." The parties also agreed that Vitek's Counterclaims stemming from the buy-back of his stock options would remain pending. Vitek's Counterclaim under the Illinois Wage Payment and Collection Act is therefore dismissed as it relies entirely on Centimark's alleged failure to pay Vitek "Additional Compensation." What remains for the purposes of Centimark's Motion for Summary Judgment are thus Vitek's Counterclaims for Breach of Contract and Promissory Estoppel based on Centimark's alleged forced buy-back of his stock options.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

5

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Hunter v. Amin, 583 F.3d 486, 489 (7th Cir. 2009). In adjudicating a motion for summary judgment, the Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Zerante v. DeLuca, 555 F.3d 582, 584 (7th Cir. 2009); Hemsworth, II v. Quotesmith.com, Inc., 476 F.3d 487, 490 n.1 (7th Cir. 2007). The Court must therefore not, at this stage of the litigation, "make credibility determinations, weigh the evidence, or decide which inferences to draw from facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "[T]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The court must therefore "look at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." Payne, 377 F.3d at 770.

In order to survive a motion for summary judgment, the nonmoving party must identify specific portions of the record that demonstrate the existence of a genuine triable issue of material fact. Hemsworth, II, 476 F.3d at 490 ("[T]he nonmoving party must identify with reasonable particularity the evidence upon which the party relies."); Murphy v. ITT Technical Servs., Inc., 176 F.3d 934, 936 (7th Cir. 1999); Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). On the other hand, a summary judgment movant will prevail where the record as a whole demonstrates that "a rational trier of fact could not find for the non-moving party." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 994 (7th Cir. 2003).

**B. Centimark's Motion for Summary Judgment**

Centimark advances two arguments in support of its Motion for Summary Judgment. Centimark's first assertion is that no valid option contact exists because Vitek provided no consideration in return for the options. Its second assertion is that under the terms of the Repurchase Agreement, Vitek released any claims arising from the Option Plan or the Vitek Grant. The Court will consider each of these arguments in turn.

*1. Lack of Consideration*

Under Pennsylvania law, an enforceable contract exists where: (1) the parties clearly express their intent to enter into such a contract; (2) there is an offer and an unconditional acceptance; (3) and there is valid consideration. In re Packer Avenue Assocs., 1 B.R. 268, 289-90 (E.D. Pa. 1979) (citing Fenestra, Inc. v. John McShain, Inc., 248 A.2d 835 (Pa. 1969); Fahringer v. Strine's Estate, 216 A.2d 82 (Pa. 1966); Thomas v. R.J. Reynolds Tobacco Co., 38 A.2d 61 (Pa. 1944)). "Consideration is defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made . . . Consideration must actually be bargained for as the exchange for the promise." Stelmack v. Glen Alden Coal Co., 14 A.2d 127, 128-29 (Pa. 1940). In cases of option contracts, lack of consideration in and of itself does not necessarily render an option invalid, but where the option has not yet been exercised and no consideration has been given, no enforceable option contract exists. In re CG Realty Investments, Inc., 79 B.R. 249, 253 (E.D. Pa. 1987) (citing Real Estate Co. of Pittsburgh v. Rudolph, 153 A. 438 (Pa. 1930)).

Vitek asserts that his continued employment at Centimark constitutes consideration for his stock options. The cases he cites in support of this assertion, however, miss the mark. For

7

example, in <u>Scott v. Workers' Comp. Appeal Bd.</u>, the issue presented was not what constituted consideration for a grant of stock options, but whether exercised stock options should be included in the definition of wages for the purposes of the Pennsylvania Workers' Compensation Act. 895 A.2d 68, 70-71 (Pa. Commw. Ct. 2003). <u>Scully v. US WATS, Inc.</u> is also not on point, as it concerns the question of whether the defendant company violated Pennsylvania's Wage Payment and Collection Law where defendant fired the plaintiff and refused to allow him to exercise his stock options. 238 F.3d 497, 517-18 (3d Cir. 2001). Neither of these cases stand for the proposition that continued employment is valid consideration for stock options under Pennsylvania law. Moreover, these cases are distinguishable from the instant one, as Vitek never attempted to exercise his options.

In this case, the undisputed evidence shows that Vitek gave up nothing in return for his stock options, and did not bargain for them. As the Court has previously noted, the Vitek Grant expressly states that "Centimark gives this Grant to the Grantee without consideration or value because the Grantee is not required to pay for the stock until exercise of the stock option. The delivery of this Grant is not a 'sale' of securities to the Grantee and the Grantee has no choice but to accept the Grant." App. to Defs.' Resp. to Centimark's Rule 56.1 Statement, Tab 3, ¶ 1. Under Pennsylvania law, Vitek therefore provided no consideration for the stock options. <u>See</u> <u>Stelmack</u>, 14 A.2d at 128-29. The undisputed evidence also indicates that Vitek never exercised his stock options. Because he gave no consideration for the stock options and never exercised them, there could be no enforceable option contract under Pennsylvania law. <u>See</u> <u>CG Realty Investments, Inc.</u>, 79 B.R. at 253. Centimark's Motion for Summary Judgment is therefore granted as to Vitek's Breach of Contract claim.

## 2. *Release of Claims*

In section I.A. of this Opinion, the Court quoted paragraphs from the Repurchase Agreement providing that: (1) Vitek voluntarily agreed to its terms; (2) it supercedes any other agreements between the parties regarding stock options; (3) and both parties are released from any claims arising from the Option Plan or the Vitek Grant. Centimark asserts that Vitek has therefore released any claims arising from his stock option grant, including Breach of Contract and Promissory Estoppel.

"Under Pennsylvania law, a release is a contract." G.R. Sponaugle & Sons, Inc. v. Hunt Construction Group, Inc., 366 F. Supp. 2d 236, 242 (M.D. Pa. 2004) (citing Evans v. Marks, 218 A.2d 802 (Pa. 1966)). Courts must therefore interpret a release like any other contract, by the ordinary rules of contract construction. Id.

> In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language, which means that, assuming the language is clear and unambiguous, the court looks no further than the language in interpreting the release, even if the language is broad or general, and no matter how improvident the agreement may later prove for one of the parties.

Id. (citing Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 1995); Republic Ins. Co. v. Paul Davis Systems of Pittsburgh South, Inc., 670 A.2d 614, 615 (Pa. 1995); Buttermore v. Aliquippa Hospital, 561 A.2d 733, 735 (Pa. 1989)). After examining the relevant paragraphs of the Repurchase Agreement, the Court finds that the language therein clearly and unambiguously releases both Centimark and Vitek from any claims that might have arisen from Centimark's grant of company stock options to Vitek.

In order to escape the effects of the release provision, Vitek asserts that Centimark threatened to fire him if he did not sign the Repurchase Agreement. In other words, Vitek asserts

that he signed the Repurchase Agreement under duress. "Duress is defined as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." Strickland v. Univ. of Scranton, 700 A.2d 979, 986 (Pa. Super. Ct. 1997). In Pennsylvania, however, the threat of termination does not constitute duress. Hopkins v. New Day Fin., 643 F. Supp. 2d 704, 715 (E.D. Pa. 2009); Askari v. U.S. Airways, Inc., No. 09-753, 2009 WL 2524530, at *4 (W.D. Pa. Aug. 14, 2009) (citing Carter v. William Penn Broadcasting Co., 233 A.2d 519, 521 (Pa. 1967)). In addition, the Repurchase Agreement expressly states that Vitek had the opportunity to consult with counsel prior to deciding whether to accept Centimark's offer to repurchase his options. App. to Defs.' Resp. to Centimark's Rule 56.1 Statement, Tab 4, ¶ 1. Under Pennsylvania law, a "party who has reasonable opportunity to consult with counsel before entering into [a] contract cannot later invalidate it by claiming economic duress." Strickland, 700 A.2d at 986 (citing Degenhardt v. Dillon, 669 A.2d 946, 950 (Pa. 1996)). Vitek's assertion that he was under duress when he signed the Repurchase Agreement is therefore unavailing.

The undisputed evidence in this case thus establishes that Vitek voluntarily and unambiguously agreed to release any and all claims he might have had arising from the Option Plan and the Vitek Grant. Vitek's Breach of Contract and Promissory Estoppel claims therefore both fail. The Court also notes that promissory estoppel is unavailable in Pennsylvania where an enforceable contract like the Repurchase Agreement exists. See Constar, Inc. v. Nat'l Distribution Centers, Inc., 101 F. Supp. 2d 319, 323 (E.D. Pa. 2000) ("[P]romissory estoppel applies only when there is no binding contract."); Bethlehem Steel Corp. v. Litton Indus., Inc.,

488 A.2d 581, 593 (Pa. 1985). Centimark's Motion for Summary Judgment is therefore granted as to both Vitek's Breach of Contract claim and his Promissory Estoppel claim.

### III. CONCLUSION

For the foregoing reasons, Centimark's Motion for Summary Judgment is granted. Vitek's Counterclaim regarding Centimark's alleged forced buy-back of his stock options is terminated with prejudice. Defendants have voluntarily dismissed all other Counterclaims. IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: March 3, 2011